UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANGELA BOUGGESS, Administratrix of
the Estate of Michael Newby                                                              PLAINTIFF

v.                                                                       CIVIL ACTION NO. 3:04CV-180-S

LOUISVILLE-JEFFERSON COUNTY
METRO GOVERNMENT                                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Louisville-Jefferson County Metro Government ("Metro"), for summary judgment in this civil rights action alleging violations the 42 U.S.C. § 1983 and state law.

This action alleges violation of the civil rights of the plaintiff's decedent, Michael Newby, when he was shot by the defendant, McKenzie Mattingly, during an undercover drug operation. Mattingly was serving as an undercover narcotics officer for the Louisville-Jefferson County Metro Police Department David District Flex Platoon. The shooting took place on January 3, 2004 outside H & S Foods/Mattie's Liquors in Louisville, Kentucky. Newby died from those gunshot wounds.

Metro has been named as a defendant in this action. The complaint alleges that "Louisville Metro is vicariously liable for Officer Mattingly's negligent, reckless or wanton conduct." Complaint, Count III, ¶ 30, and that "Louisville Metro was deliberately indifferent to its police officers' need for training about interactions in undercover drug investigations." Count IV, ¶ 31. Metro seeks summary judgment as to both counts.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

>The facts alleged in the complaint relating to Metro are:
>
>14. Upon information and belief, Officer Mattingly had not been trained properly in undercover narcotics investigations. If he had, he would have known that it is improper for the undercover narcotics officer to pursue, arrest or apprehend potential suspects or get out of his vehicle. It is the duty of the other members of the narcotics flex platoon to pursue, arrest and/or apprehend suspects, not the undercover officer himself...
>
>20. Louisville Metro's failure to provide adequate training to Officer Mattingly, especially training about interaction with citizens in under cover [sic] narcotics investigations, constitutes deliberate indifference to this obvious need.

Complaint, ¶¶ 14, 20.

Metro contends that it cannot be held vicariously liable for the acts of Mattingly. Metro also contends that the plaintiff has not come forward with evidence that Metro failed to adequately train Mattingly and thus there has been no showing of a Metro policy or custom which can be linked to the harm caused to Newby. That is, no "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" has been shown, and therefore Metro cannot be found liable

*Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978).

Metro cannot be held vicariously liable for the actions of Mattingly. *Collins v. City of Harker Heights*, *Texas*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), *citing, Monell*, *supra*. A municipality cannot be held liable "solely because it employs a tortfeasor." *Collins*, 112 S.Ct. at 1066. Metro may be found liable only where a failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Thus, to the extent that Count III alleges vicarious liability, the claim must be dismissed as to Metro.[1]

Count IV of the complaint alleges that "Louisville Metro was deliberately indifferent to its police officers' need for training about interactions in under cover [sic] drug investigations...Louisville Metro therefore is liable for the constitutional deprivations caused by Officer Mattingly's shooting and killing of Newby." Complaint, Count IV, ¶¶ 31, 32. The plaintiff urges that she has offered evidence in the form of expert testimony to support her claim that Metro failed to adequately train its officers.[2]

For the reasons stated below, we conclude that the plaintiff has not controverted the evidence offered by Metro that Mattingly had adequate training in narcotics investigation prior to the incident in question. Further, we conclude that much of the plaintiff's expert opinion falls outside of the parameters of the appropriate inquiry into Metro's potential liability in this case.

The court determined in an earlier opinion, construing the evidence in the light most favorable to the plaintiff, that genuine issues of material fact exist concerning the events which transpired immediately prior to the shooting. We followed the directive of the Sixth Circuit and

---

[1] Additional claims and parties are included in Count III which have been addressed elsewhere by the court.

[2] The plaintiff has not abandoned this claim, despite Metro's contention to the contrary.

segmented the events, focusing on the information possessed by Mattingly at "the very moment" or "split second" before Mattingly decided to employ deadly force against Newby.  *See, Sample v. Bailey*, 409 F.3d 689 (6th Cir. 2005) and cases cited therein; *Dickerson*, *supra*.  We concluded that factual disputes underlying Mattingly's purported belief that Newby was armed and posed a threat to Mattingly and others are pivotal in the determination whether Mattingly employed excessive force.

The Sixth Circuit Court of Appeals noted in *Dickerson v. McClellan*, 101 F.3d 1151, 1161 (6th Cir. 1996) that

> The time-frame is a crucial aspect of excessive force cases.  Other than random attacks, all such cases begin with the decision of a police officer to do something to help, to arrest, to inquire.  If the officer had decided to do nothing, then no force would have been used.  In this sense, the police officer always causes the trouble.  But it is trouble which the police officer is sworn to cause, which society pays him to cause and which, if kept within constitutional limits, society praises the officer for causing.

*Dickerson, supra., quoting, Plakas v. Drinski*, 19 F.3d 1143 (7th Cir.), 19 F.3d 1143, (7th Cir), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994).  Thus the *Dickerson* court held that the court must evaluate "whether the force used to effect the seizure was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances."  *Dickerson*, 101 F.3d at 1161, *quoting, Carter v. Buscher*, 973 F.2d 1328 (7th Cir. 1992); *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

In other words, we must limit the scope of our analysis to those matters directly impacting Mattingly's decision to employ deadly force.  The events occurring in the moments immediately preceding the decision to employ deadly force are determinative.

The plaintiff has offered the Fed.R.Civ.P. 26(a)(2) written report of her expert witness, Robert O'Neill.[3] O'Neill was employed as an officer with Metro from January 1985 to June 2004. In this and other employment, O'Neill worked as a narcotics detective.

O'Neill stated in his report that

> It is my opinion that based on my training through the D.E.A., an undercover officer should not be involved in the arrest of a suspect or take any enforcement actions. The officer should consider whether an arrest is in need at that point in time. The decision to make the arrest revolves around the evidence in the officer's possession and in the custody of the police, through proper training the officer should be able to identify the suspect at a later date, and the officer should realize that the suspect most likely will be in the same location the next day or within days of the event.

O'Neill Report, p. 2. He offered his opinion that Mattingly failed to carry out his duties because a properly trained narcotics officer should have:

1. remained in his vehicle.

2. not have engaged Newby.

3. let the suspects leave with the narcotics money.

4. realized that drug suspects' main concern is money, not violence.

5. realized that drug dealers return to their turf, so it would have been easy to return at a later date and find the suspects.

6. known not to go into a situation where an officer feels uncomfortable and unprotected.

7. taken cover after Newby broke free of him rather than closing the distance and firing at Newby.

8. known not to involve a Caucasian officer in an undercover buy in the West End of Louisville.

*Id.* Additionally, O'Neill has criticized the decision to "decentralize" the Metro narcotics division, reciting a variety of reasons. O'Neill Report, p. 3.

---

[3] The disclosure is four pages in length. If this witness has been deposed by either party, the court has not been made aware of it. The four-page Rule 26(a)(2) disclosure is the only evidence offered by the plaintiff in support of her failure to train claim against Metro.

Under the mandate of *Dickerson* the court is not to focus on whether it was reasonable for the police to create the circumstances which led to the use of force. Therefore, O'Neill's opinion concerning matters which relate to the creation of the circumstances within which the shooting occurred, such as remaining in the vehicle, not engaging the suspect, letting the suspects escape with the money, are not relevant to our inquiry into whether a Metro policy or custom has been identified which bears a causal link to the shooting. These other matters raised by O'Neill have no bearing on the narrow issue of the propriety of Mattingly's decision to employ deadly force. *See, Dickerson, supra.*

O'Neill *does* opine that Mattingly should have taken cover once Newby broke free of him, instead of closing the distance between them and firing at him. O'Neill Report, p. 3. This opinion bears upon the excessive force inquiry. However, nowhere in his report does O'Neill state that Mattingly was inadequately trained. Rather, O'Neill's states that "McKenzie Mattingly failed to carry out his police duties *in the manner that a properly trained narcotics detective should have* in a similar situation..." That is, he states that Mattingly simply failed to do what his job required.

Further, Metro has produced Mattingly's training record which lists the training that he received in various areas. Metro has indicated that Mattingly "had all the training that we had wanted him to have plus, and plus some as it pertains to drugs." Metro Police Chief Robert White depo., p. 106. Thus, while O'Neill has stated that Mattingly's decision to "close the distance and fir[e] at Newby" was not what a properly trained narcotics detective should have done, there is nothing in the record indicating what, if anything, was deficient in Mattingly's training in this area to cause him to act improperly.

O'Neill contends that he foresaw that "decentralization" of the Metro narcotics division would result in officers in flex platoons not having the proper narcotics training, especially in undercover situations. O'Neill Report, p. 3. This matter is not pertinent to any issue presently before us. O'Neill does not state that Mattingly's training was inadequate because of

decentralization or that the claimed excessive use of force resulted from such a deficiency. There is nothing in the record which contradicts the evidence of record supporting the contention that Mattingly had sufficient training in undercover narcotics investigation such that he was equipped to properly perform his job.

Metro having come forward with evidence that, in its view, Mattingly was fully and adequately trained, the plaintiff may not merely rest upon the allegations of the complaint. At the summary judgment stage, it is not the court's function to weigh the evidence, but rather to determine whether a reasonable jury could return a verdict for the nonmoving party, viewing all facts and inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 248. There must be more than "some metaphysical doubt as to the material facts" in question. The nonmovant must provide "concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Company v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The court has only the Rule 26 Report of O'Neill to address the plaintiff's allegation of Metro's failure to adequately train Mattingly. The court has considered the sole piece of expert evidence offered by the plaintiff in opposition to summary judgment and has found it wanting. The court therefore concludes that no genuine issue of material fact exists as to the adequacy of Mattingly's training.

Finally, the plaintiff quotes from the Sixth Circuit case of *Brown v. Shaner*, 172 F.3d 927 (6th Cir. 1999) for the proposition that deliberate indifference can be established by proof that a city failed to act in response to repeated complaints of constitutional violations. The plaintiff then provides a slew of newspaper articles concerning the reaction of the community to shootings by police and the adequacy of police training.

First, there is no allegation in the complaint that Metro has turned a deaf ear to community reaction to this or any police shooting. Furthermore, the Newby shooting was immediately and extensively investigated, Mattingly was fired from his employment with Metro for violation of department policies and procedures, and was indicted and tried for murder in connection with the incident. This last ditch effort by the plaintiff to find a basis for a claim of deliberate indifference against Metro is neither alleged nor factually supported by the evidence in this action.

For the reasons stated, the court concludes that no genuine issue of material fact exists and Metro is entitled to judgment as a matter of law as to it as to Counts III alleging vicarious liability and Count IV alleging deliberate indifference to its officers' need for training.

The plaintiff concedes that her state law claims against Metro are barred by sovereign immunity. *Yanero v. Davis*, 65 S.W.3d 510, 526 (Ky. 2001), *citing, Edwards v. Logan County*, 50 S.W.2d 83, 85 (Ky. 1932).

Motion having been made and for the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Louisville-Jefferson County Metro Government, for summary judgment (DN 43) is **GRANTED** and the action is **DISMISSED AS TO IT**.

**IT IS SO ORDERED**.